**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA WRITER'S CLUB, | Case No. C-11-02566 JCS |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT SCOTT SONDERS' MOTION TO TRANSFER VENUE   [Docket No. 12]** |
| SCOTT ALIXANDER  SONDERS,  ET AL., | |
| Defendant(s) | |
| _____/ | |

## I.    INTRODUCTION

On Friday, September 30, 2011, at 9:30 a.m., a hearing was held on Defendant's Motion to Change Venue to the Central District of California (the "Motion").  In the Motion, Defendant Scott Alixander Sonders ("Sonders") requests that the Court transfer this action to the Federal District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Motion is DENIED.

## II.    BACKGROUND

### A.    Procedural Background

On May 26, 2011, Plaintiff, the California Writers Club ("CWC"), filed a complaint in the United States District Court for the Northern District of California against Defendants Sonders and the California Writers Coalition, Inc. ("Coalition"). Sonders, a pro se defendant, filed the instant Motion on June 21, 2011.  The Coalition has not appeared or otherwise responded to the Complaint and the Court entered default against the Coalition on June 28, 2011.

### B.    The Complaint

In its Complaint, Plaintiff CWC alleges it was founded in 1909 in Alameda, California and was incorporated in 1913.  Complaint at ¶¶ 5, 8.  According to CWC, its first two branches - the

Berkeley and Sacramento branches - opened in 1925. *Id.* at ¶ 5.  Subsequently, additional branches have opened throughout California. *Id.*  CWC alleges that since its creation it has been run by a Central Board of Directors ("Central Board") and that its corporate structure has not changed even as the number of branches has increased.  *Id.*  According to CWC, it has used as its corporate business address, P.O. Box 1281, Berkeley, CA, 94701, for decades.  *Id.*   CWC further claims that it is currently a certified 501c3 nonprofit educational corporation with 18 branches and more than 1,300 paying members throughout California.  *Id.* at ¶ 8.  CWC asserts that it recruits its members through its own events and activities and through advertising, both print and online. *Id.* at ¶ 5.

CWC maintains it is the sole owner of U.S. Trademark No. 3,701,007, registered October 27, 2009, for its "California Writers Club Sail On" words plus design (logo).  *Id.* at ¶ 11.  Additionally, CWC asserts it is the sole owner of a U.S. Trademark corresponding to application No. 85/104,452, filed August 10, 2010, for the word mark "California Writers Club." *Id.* at ¶ 12.  This trademark was published on March 15, 2011, received no opposition during the publication period, and was subsequently registered within 12 weeks of the date of publication.  *Id.*   CWC asserts it has been using the "California Writers Club Sail On" logo and "California Writers Club" word mark in the United States in connection with the services listed in the trademark registrations since as early as June 20, 1959. *Id.* at ¶ 13 and Exhibits 3-4.  Furthermore, CWC claims its earliest usage of the mark dates back to 1913.  *Id.*  CWC also asserts that these trademarks are inherently distinctive and have acquired distinctiveness through continuous and widespread use in the United States and worldwide. *Id.* at ¶ 14.

The CWC San Fernando Valley branch ("CWC-SFV") was established around 1986 when the San Fernando Valley Writers, a separate entity, entered into a partnership agreement with the CWC Central Board.  *See* Complaint at Exhibit 1, p. 1. CWC claims that CWC-SFV is under complete control of CWC and is bound by CWC's policies, procedures and bylaws in accordance with Internal Revenue Service Publication, "Tax-Exempt Status for Your Organization."  *Id.* at ¶ 9. Furthermore, CWC maintains that CWC-SFV publishes an online newsletter entitled "The Valley Scribe." *Id.*  CWC also claims that Defendant Sonders, a resident of Sherman Oaks, California, was the president of CWC-SFV from 2006 to 2008. *Id.* at ¶ 6.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    CWC alleges that as early as April 2008 Sonders founded and was President of Defendant

2    Coalition and that he subsequently held the position of Executive Director of the Coalition. *Id.*

3    CWC alleges that the Coalition is a California corporation authorized to do business in California

4    with its principal place of business at P.O. Box 17897, Encino, California. *Id.* CWC further alleges

5    that the Coalition's registered agent is Bruce Zacuto, located at business address 5895 White Oak,

6    Encino, California, 91416. *Id.* According to CWC, the Coalition claims to be a non-profit

7    organization and holds various activities and events for its over 800 members, such as monthly

8    meetings, talks by high-profile speakers, networking events, open mics, and critique groups. *Id.*

9    CWC also asserts that the Coalition publishes an online newsletter, entitled "The Scribe." *Id.*

10    CWC claims that in October 2008 it became aware that CWC-SFV had suffered a sharp

11    decline in membership renewals and events/activities. *Id.* ¶ 21.  According to CWC, even Sonders,

12    who was President of CWC-SFV at the time, did not renew his membership to CWC-SFV. *Id.*

13    CWC asserts that in January 2009, Sonders declared to the CWC Central Board in an email

14    that he was resigning from his position as President of CWC-SFV and dissolving his membership

15    agreement with CWC.[1]  *Id.*; *See also* Complaint at Exhibit 1.

16    CWC claims that in June 2009 it became aware that Sonders had created the Coalition while

17    he was the President and Executive Director of CWC-SFV. *Id.* at ¶ 15. CWC alleges that Sonders,

18    while he was President of CWC-SFV, used CWC's funds to pay for the Coalition's incorporation

19    fees. *Id.* at ¶ 22. CWC asserts that Sonders recruited new Coalition members from the San

20    Fernando Valley and greater Los Angeles areas and also directly from CWC-SFV and CWC-West

21    Valley branch membership rosters. *Id.* at ¶ 15. CWC claims that Sonders and the Coalition

22    organized the Coalition's events through its own website and other websites such as Facebook.com

23    and Google.com. *Id.* CWC claims that various pages from these website and from the Coalition's

24    publication, "The Scribe," feature prominently CWC's name and its registered trademark, "California

25    Writers Club Sail On." *Id.* CWC maintains that neither Sonders nor the Coalition were given

26

27    ─────────────

28    [1]The email that is attached to the Complaint is styled as a "Declaration of Independence" on the part of a group that calls itself the "San Fernando Valley Writers."  This group sets forth a list of grievances against CWC and states that it is terminating its association with CWC and returning to the independent status it maintained before 1986 when it became CWC-SFV.

authorization to use CWC's name or trademarks in connection with the Coalition. *Id.*

CWC claims that in September 2009 it sent Sonders and the Coalition a cease-and-desist letter informing Defendants of the alleged infringement and demanding they immediately discontinue all usage of CWC trademarks and property. *Id.* at ¶ 16 and Exhibit 6. CWC further claims that in December 2009, the then-President of the Coalition sent a letter in response that acknowledged receipt of CWC's September 2009 letter. *Id.* at ¶ 17. CWC alleges it sent Sonders another cease-and-desist letter in December 2009, demanding his response and compliance with the September 2009 letter. *Id*. at ¶ 21 and Exhibit 6. CWC also asserts that in August 2010 it sent a final cease-and-desist letter to Sonders and the Coalition, this time through its legal counsel. *Id.* at ¶ 18.

CWC alleges that despite knowledge of CWC's trademarks, Defendants continue to intentionally use CWC's "California Writers Club" and "California Writers Club Sail On" trademarks. *Id.* at ¶ 19. Furthermore, CWC believes that the Coalition applied for and received the Los Angeles Fictitious Business Name (FBN) "California Writers Club." *Id.* CWC believes that Defendants are likely to expand their willful and unauthorized use of CWC's trademarks and will continue to unfairly compete with CWC by using these marks, unless restrained by the Court. *Id.* at ¶ 20. CWC also alleges that despite its demands in the September and December 2009 letters and other informal requests, Sonders has refused to return CWC property, including monies, branch records, membership rosters and other trade secrets, and other personal property. *Id.* at ¶ 21.

Based on the factual allegations summarized above, CWC asserts the following claims: 1) Federal trademark infringement under 15 U.S.C. §§ 1114, et seq., 15 U.S.C. §§ 1065, et seq.; 2) Federal laws of common law trademark and unfair competition, 15 U.S.C. §§ 1125(a) et seq.; 3) violation of California Business and Professions Code §§ 17200 et seq.; 4) Federal copyright infringement, 17 U.S.C. §§ 101 et seq.; 5) Federal theft of trade secret, 18 U.S.C. § 1832; 6) Federal false designation of origin, Trademark Act Section 2(a), 15 U.S.C. § 1125(a); 7) California embezzlement, C.C.P. §§ 503-515; and 8) California fraud, C.C.P. § 430.10(g), § 930. *Id.* at ¶ 1.

**C.    The Motion**

In the Motion, Sonders maintains that even though venue is proper in the Northern District of California, transfer to the Central District is appropriate because: (1) Sonders is disabled and resides

United States District Court
For the Northern District of California

in the Central District, (2) many witnesses and pieces of evidence are located in the Central District, (3) the alleged tortious conduct occurred in the Central District and the only connection this lawsuit has with the Northern District is it is where Plaintiff and Plaintiff's counsel reside, and (4)  the action could have been brought in the Central District.  Motion 1-2; Sonders' Memorandum of Points and Authorities in Support of Motion ("MPA") (Dkt. No. 13) 1.

In support of his contention in the Motion that he suffers from a physical disability, Sonders provides a declaration in which he states he is currently on Social Security Disability and has been issued a California DMV handicapped placard due to his physical disability. Declaration of Scott Sonders in Support of Motion ("Sonders Decl.") (Dkt. No. 14) at ¶ 4.

With respect to witnesses,  Sonders states that he expects seven witnesses to testify in this case, all of whom reside in the Central District and "have jobs, careers, families, and other responsibilities in Los Angeles that prevent them from traveling to San Francisco" to participate in this case.[2]  *Id.* at  ¶¶ 2-3.  Regarding the evidence, Sonders argues that all relevant documents and records are located at Defendants [sic] principal place of business in the Central District.  MPA 4.

Sonders asserts that Plaintiff's choice of forum should not be given substantial weight because the alleged conduct in the Complaint lacks any significant contact with the Northern District other than the fact it is where Plaintiff and Plaintiff's counsel resides. Sonders argues that convenience of counsel is irrelevant in a venue motion (citing *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1973)).  Sonders also claims that he maintains no contacts in

---

[2]Sonders claims those witnesses and their expected testimony are:

a.  Pauline Williams: President of the Coalition, and a resident of Los Angeles County, will attest to how long Exhibit 5 of Plaintiff Allegations existed and why. Will testify regarding Casey Wilson, the "unregistered SFV, and the "Club" Central Board allegations in the complaint.
b.  Carol Wood, President of the CWC-SFF, and a resident of Los Angeles County, will testify to the origins of the membership dispute.
c.  Mike Austin:  A resident of the county of Los Angeles, will testify to the tortuous conduct of the Club Central Board Officers.
d.  Leorna Smalley, James Gannatta and Ron Gregus , all residents of Los Angeles County, will testify regarding elections, bookkeeping and membership related issues.
e.  Matt Schliessman, VP of the SFV Coalition, a resident of the County of Los Angeles, will discuss the Club Central Board and membership issues.

Sonders' Decl. at ¶ 2.

5

**United States District Court**
For the Northern District of California

1   the Northern District other than his "rocky business relationship with [CWC]." MPA 3.

2   Finally, Sonders claims all of the incidents that are the subject of this case occurred in the Central

3   District. *Id.* at 4.

4       **D.    Sonders' Letter Brief**

5       On June 29, 2011, before Plaintiff filed its Opposition brief, Sonders filed a two-page

6   supplemental letter brief, offering additional exhibits in support of his Motion ("Sonders Letter

7   Brief") (Dkt. No. 19). The letter is, in large part, a response to issues that were raised in an email

8   dated June 23, 2011 from CWC's counsel, Ray Shahani, to Sonders. *See* Sonders' Letter Brief,

9   Exhibit 1(June 23, 2011 email). In the email, Mr. Shahani states that venue is proper for the

10  following reasons:  1) CWC resides in the Northern District and therefore has been damaged in this

11  district; 2) CWC's corporate officers, who are the witnesses to Sonders' alleged wrongdoing, are in

12  the Northern District; 3) Sonders held the position of President of CWC-SFV and as such was

13  contractually bound to attend Central Board meetings; and 4) Sonders in fact attended several

14  meetings of the Central Board in 2007.

15      In the Letter Brief, Sonders challenges CWC's assertion that it "resides" in the Northern

16  District, pointing to the P.O. Box address listed as CWC's address on the Patent and Trademark

17  offices' certificate of registration for the CWC logo. *Id*. at Exhibit 2.  According to Sonders, CWC

18  cannot "reside" in a post office box.  Sonders' Letter Breif 1.  Instead, Sonders claims that CWC only

19  exists through its branch organizations, half of which are located in Southern California. *Id*. Further,

20  Sonders claims that the only branches with any connection to the allegations in the Complaint are

21  located in Southern California. *Id.*

22      Second, Sonders challenges CWC's assertion that the alleged infringements and "wrong

23  doings" have caused damage in the Northern District. *Id.*  Sonders claims that CWC has contradicted

24  itself because it repeatedly claims in its Complaint that the Los Angeles based Coalition infringed on

25  the Los Angeles based CWC-SFV – both of which are in the Central District. *Id.* at 1-2.

26      Third, Sonders argues that CWC attempts to mislead the Court in stating that Sonders has

27  attended CWC meetings in Northern California.  Sonders argues that  two of the three Central Board

28  meetings he attended occurred in Riverside and Orange Counties, and that this is provable by the

United States District Court
For the Northern District of California

1   minutes of those meetings. *Id.* at 2. Sonders does not provide copies of the minutes, however.

2        Fourth, Sonders challenges CWC's assertion that all of the witnesses are based in Northern

3   California because that is where the corporate offices are based, claiming that there are at least 11

4   witnesses that reside in the Central District.  *Id.* Specifically, Sonders provides page three of the

5   January 2009 email (described above) listing 11 members (including Sonders) of the San Fernando

6   Valley Writers who stated that they "absolved their allegiance" to the CWC Central Board.  *See Id.*

7   at Exhibit 3.  Additionally, Sonders provides a draft of a witness list that includes nine individuals,

8   seven of which were previously named in his Motion. *Id.* at Exhibit 4.  The additional witnesses are

9   Leila Morris and Casey Wilson.  *Id.*  Sonders claims that Leila Morris is the Secretary of the San

10   Fernando Valley Writers, and will testify about CWC "harassment."  *Id.* Sonders claims that Casey

11   Wilson resides in Ridgecrest, which is closer to Los Angeles than San Francisco. *Id.*  This witness

12   list also states generally that more than one dozen witnesses for the Defendant reside in Los Angeles

13   and "most" of them are elderly and "many" have disabilities.  *Id.*

14        Furthermore, the witness list also states that "Defendant, Scott Sonders, is currently and

15   verifiably on Social Security, has mobility issues, and have been issued a CA-DMV 'placard'

16   indicating such." *Id.*  Sonders further supports his disability claim by providing a copy of his

17   California DMV issued handicapped parking placard.  *Id.* at 2 and Exhibit 7.

18        Sonders also argues that Shahani is engaging in intentional misconduct because he knows

19   that Sonders is "barely surviving on Social Security," and therefore CWC will be unable to recover

20   any of its claimed damages. *Id.* at 2.  In support of this contention, Sonders provides a copy of the

21   Coalition's Annual Registration Renewal Fee Report, indicating the Coalition's total assets are

22   $500.00. *Id.* at Exhibit 6.

23        In the Letter Brief, Sonders also claims that Shahani has threatened Sonders and is trying to

24   force a settlement by coercion.  Sonders Letter Brief 1. He claims that Shahani has shown a lack of

25   due diligence, has engaged in intentional misconduct, and has deliberately misrepresented material

26   evidence. *Id.*

27      **E.**    **CWC's Opposition**

28   CWC filed its Opposition to Sonders' Motion for Change of Venue ("Opposition") on August

United States District Court

For the Northern District of California

19, 2011.  In its Opposition, CWC argues that transfer to the Central District is inappropriate because the Northern District is where a substantial part of the events giving rise to the claim occurred. Opposition 6.  Further, CWC claims that all 18 branches are subservient to CWC, and must abide by its Constitution, bylaws, policies and procedures.  Declaration of Robert A. Garfinkle in Support of Opposition ("Garfinkle Decl.") (Dkt. No. 26) at ¶¶ 6, 20.  CWC argues that Sonders, by becoming a member of CWC and an officer of CWC-SFV, agreed to the terms of the CWC Constitution, bylaws, policies and procedures and therefore submitted to the jurisdiction and venue in the Northern District of California for disputes arising out of CWC business. Opposition 6. According to Robert A. Garfinkle, the current CWC President, the wording of CWC's bylaws during the time Sonders was on the Central Board stated, "[t]he Central Board shall meet four times yearly, one meeting being the general membership meeting required by California state law." Garfinkle Decl. at ¶ 6.  CWC claims that Sonders personally traveled to Northern California to attend quarterly Central Board meetings as part of his duty to the CWC corporate body.  Opposition 6.  Garfinkle states that Sonders attended the following meetings:  the April 15, 2007 meeting at the Clarion Hotel in San Jose; the July 15, 2007 meeting at the Fairfield Inn in San Jose, wherein Sonders was elected Vice President of CWC; and the October 21, 2007 meeting at the Wyndham Inn in San Jose.  *Id.* at ¶¶ 9-12.  Minutes from these meetings are attached to Garfinkle's Declaration as Exhibits 2-4.

CWC also argues that transfer is inappropriate because a plaintiff's choice of forum should not be disturbed.  Opposition at 8.  First, CWC asserts that its choice of forum is presumptively reasonable because several CWC officers and board members, including Garfinkle, Kathy Urban and George Dave, reside within an hour's travel of the San Francisco courthouse. *Id.* (citing *Park v. CAS Enterprises, Inc.*, Case No. 08-cv-0385 (Dkt. No. 9), at *3 (S.D. Cal. June 9, 2008)).  Second, CWC claims that Sonders ignores the nature of the allegations in the Complaint. *Id.* Specifically, CWC claims that the alleged trademark and copyright infringement is inherently portable because it is occurring online and is available to anyone who accesses Sonders' websites on the internet. Therefore, CWC argues that due to this connection to the Northern District, its choice of forum should not be overturned.  *Id.*  CWC acknowledges that a plaintiff's choice of forum may be afforded less deference where it is found that the plaintiff has engaged in forum shopping but contends that

United States District Court

For the Northern District of California

there is no evidence, nor has Sonders alleged, that CWC has engaged in forum shopping. *Id.* (citing *Royal Queentex v. Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139 (N.D. Cal. Mar. 1, 2000) (noting that a plaintiff's choice of forum is accorded less weight where it is apparent plaintiff engaged in forum shopping)).

CWC further asserts that transfer is inappropriate because it would merely shift the inconvenience from one party to the other. *Id.* at 10. CWC claims that most of the Central Board members reside within one hour of the San Francisco courthouse and transfer would only shift the burden of inconvenience to plaintiff. *Id.* Additionally, CWC challenges Sonders' claim of having a physical disability, submitting declarations of current and former CWC Central Board members who claim they have never known Sonders to be physically or mentally disabled. Garfinkle Decl. at ¶¶ 22-24 ("I have always known Sonders to be an energetic, fully-functioning individual. . . .The photograph which Sonders himself uses for personal purposes . . . seems more acrobatic than might be considered possible by a physically handicapped person[.]"); Declaration of Edward C. Wilson AKA Casey Wilson in Support of Opposition (Dkt. No. 27) at ¶¶ 3-5 ("I have never seen Sonders in a wheelchair. I know of no mobility issues[.]"); Declaration of Pauline Williams in Support of Opposition (Dkt. No. 28) at ¶¶ 3-4 ("I currently have no knowledge that Sonders is disabled or uses a disabled parking placard."). CWC further challenges Sonders' physical disability by claiming that the copy Sonders provided of his handicapped placard is incomplete, cutting off the dates and showing a personal address for Sonders that is not his current residence. MPA 14.

In response to Sonders' argument that transfer is appropriate for the convenience of the witnesses, CWC claims that Sonders has failed to provide sufficient information about his witnesses to allow the court to make a determination of how important their testimony will be. Opposition 11. CWC asserts that Sonders' sole declaration in support of the Motion does not explain why his witnesses may be called to testify on his behalf. *Id.* CWC urges that the moving party may not rely on vague generalizations of inconvenience, but instead must demonstrate, through affidavits or declarations, who the key witnesses are and the general substance of their testimony. *Id.* at 10-11. CWC further asserts that where a moving party has failed to provide sufficient information for the court to determine the importance of the witnesses' testimony, the motion to transfer should be

**United States District Court**
For the Northern District of California

1  denied. *Id.* at 11.  (citing *Day v. Harrah's Hotel & Casino Las Vegas*, 2010 U.S. Dist. LEXIS

2  116817, at *19-20 (S.D. Cal. Nov. 2, 2010)).  CWC also provides a list of its own potential witnesses

3  that may have knowledge relating to the allegations.[3]  *Id.* at 11-12.

4      CWC further argues that transfer to the Central District is improper because its

5  embezzlement, unfair competition, breach of contract, breach of fiduciary duties, and fraud claims

6  are based on the embezzlement of funds from CWC, which occurred specifically in the Northern

7  District.  *Id.* at 12-13.  In particular, because the CWC-SFV branch is under complete control of the

8  Central Board, the alleged embezzled funds belong, at least in part, to the CWC corporate body,

9  whose corporate address is in Berkeley, California.  *Id.* at 13.

10      Plaintiff also claims that there is no expected reduction in litigation costs by transferring to

11  the Central District.  *Id.* at 13.  CWC claims that because witnesses and parties are scattered

12  throughout California, travel costs to either venue would be about the same. *Id.*

13      CWC also argues that Sonders' Letter Brief should be stricken or otherwise ignored in

14  deciding this Motion because it is an improper ex parte communication with the Court and a copy

15  was never served on CWC. *Id.* at 5; First Amended Declaration of Ray K. Shahani in Support of

16  Opposition ("Shahani Decl.") (Dkt. No. 30) at ¶ 5-6.  Additionally, CWC argues that the Letter Brief

17  should also be stricken or ignored because it was an improper filing in support of his Motion, in

18  violation of Fed. R. Civ. P. 4(a). Opposition 5-6.

19      Lastly, CWC claims that Sonders has acted in bad faith in his communications with CWC's

20  counsel, Ray Shahani.  *Id.* at 14.  CWC claims that Sonders has made threats of filing various

21  motions with the sole purpose of increasing CWC's costs and frustrating CWC's efforts to enforce its

22  intellectual and other rights. *Id.*  Shahani claims that he received an email from Sonders in which

23  Sonders demanded $10,000 if CWC filed an opposition to this Motion.  Shahani Decl. at ¶ 3.

24  Shahani also states that Sonders threatened to increase his demand an additional $5,000 "for every

25

26

27      [3]Plaintiff lists the following individuals as potential witnesses:  Robert A. Garfinkle, current
CWC President; David George, former Central Board Membership chair; Kathy Urban, will testify
about financial issues with regard to membership dues and unauthorized expenditures; Barbara Truax,

28  former CWC President; David LaRoche, Central Board "Policy and Proceudres" chair; Anthony
Folcarelli, former CWC President while Sonders was VP; Dave Sawle, former CWC-Berkely branch
President; Margie Lee Webb, former Central Board Representative; Nancy Alexander, Gil Mansergh,
Carol O'Hara, ADA considerations at Asilomar conferences; Jay-Marie Garcia and/or Ron Garcia, from
Jay-Marie Garcia Insurance Agency; and Joyce Krieg, Central Board member.  Opposition at 11-12.

United States District Court

For the Northern District of California

1  related and future action Sonders makes" and has also threatened to file an Answer and counterclaim

2  against CWC and demand damages for one million dollars. *Id.* at ¶¶ 3-4.  Furthermore, Shahani

3  claims that Sonders has threatened to abuse the legal and discovery process by "issuing witness

4  subpoenas for numerous past & present members of the Club" if the case is not quickly settled to his

5  satisfaction. *Id.* at ¶ 3.  Shahani has attached copies of these email communications to his declaration

6  as Exhibits 1-2.  CWC requests that the Court recognize that Sonders has filed this Motion to

7  improperly interfere with the current action and unfairly increase the costs of litigation.  Opposition

8  14.

9         **F.**        **September 15, 2011 Pleading**

10       On September 15, 2011, Sonders filed an "Answer to Plaintiff's Opposition in Support of

11  Motion for Change of Venue to the Central District of California," which the Court construes as his

12  "Reply" brief.  Sonders first argues that CWC's Opposition should be disregarded in deciding this

13  Motion because its contents are "irrelevant, scandalous, inflammatory, and . . . false[.]"  Reply 2.

14  Sonders also renews his argument that transfer is proper in this case because the Northern District

15  lacks any significant contact with the conduct alleged in the Complaint *Id.* at 3.  In support, Sonders

16  now claims that CWC has committed perjury by stating its corporate address has been for decades a

17  post office box in Berkeley, California.  *Id.* at 2.  Instead, Sonders claims, for numerous recent years,

18  CWC "has posted in official government documents addresses as various as Ridgecrest, CA and

19  Laguna Niguel, CA - both of which are closer to the Central District." *Id.*  In further support,

20  Sonders files an additional declaration ("Sonders Reply Decl.") (Dkt. No. 35), to which he attaches:

21  1) a printout from the California Secretary of State's website of a page indicating that CWC's agent

22  for service as of January 2009 is located in Laguna Niguel, and 2) a screenshot of the Attorney

23  General's website showing what appears to be a charity registration record for "Ridge Writers," with

24  an address listed in Ridgecrest, California. Sonders' Reply Decl. at Exhibits 1-2.

25       Sonders renews his argument that transfer is appropriate for the convenience of his

26  witnesses. Reply 3.  He now claims that there are 24 "material witnesses" that reside in the Central

27  District, whereas the CWC has only listed two witnesses based in the Northern District.  *Id. See*

28  Sonders Reply Decl. at Exhibit 3 (list of 24 witnesses).

**United States District Court**
For the Northern District of California

1    In furtherance of his disability claim, Sonders has submitted his own Reply declaration, the

2   declarations of Bruce Zacuto and Ceri Williams, and additional pieces of evidence.  In his

3   declaration, Sonders states he is legally disabled, that everyone who "truly knows" him knows he is

4   disabled, and that he has extensive medical documentation of his disabilities.  Sonders' Reply Decl.

5   at ¶¶ 4-6.  Sonders also states that the CWC declarants were mistaken in their claims about Sonders'

6   physical state. *Id.* at ¶¶ 17, 23-24.

7   Specifically,

8        Pauline [Williams] seems to have a poor memory. . . . She has seen my [d]isabled
         [p]lacard on many occasions.  She knows well that I am [d]isabled. . . .[Casey]
9        Wilson does not actually "know" me.  He has only momentarily seen me. . . .He
         could not pick me out of a line-up.  He. . . mistakenly describ[ed] me not from
10       personal experience but from his inaccurate observation of a very hazy and
         20-year old photo. . . .[Robert] Garfinkle does not actually "know" me.  He has
11       only momentarily seen me. . . .We have never had a one-on-one, in person
         conversation. . . . [Williams, Wilson and Garfinkle have] no capacity to evaluate
12       my physical condition but declare[] under oath otherwise.

13   Sonders Reply Decl. at ¶¶ 17, 23-24.  Bruce Zacuto states he has known Sonders for 15 years and

14   has personally witnessed Sonders' several disabilities over the past many years.  Declaration of

15   Bruce Zacuto in Support of Motion ("Zacuto Decl.") (Dkt. No. 36) at ¶¶ 3-4.  He also claims that he

16   volunteered to physically assist Sonders at CWC meetings and with many other ordinary tasks,

17   including driving.  *Id.* at ¶¶ 7-8.  Finally, Zacuto states he has seen Sonders' health increasingly

18   deteriorate since the filing of CWC's Complaint. *Id.* at ¶ 9.

19   The declaration of Ceri Williams states that Williams has known Sonders for 24 years and

20   has personally witnessed Sonders' declining health and several disabilities, and that his health has

21   worsened since the filing of CWC's Complaint.  Declaration of Ceri Williams in Support of Motion

22   ("C. Williams Decl.") (Dkt. No. 37) at ¶¶ 3, 5, 10.  Williams also claims that Sonders has a disabled

23   parking placard which he received after "rigorous medical examination" by state-licensed

24   physicians.  *Id.* at ¶ 4.  Williams further states that Sonders rarely leaves his home and that Williams

25   assists Sonders with tasks and chores. *Id.* at ¶¶ 7-8, 11.  Finally, the declaration also claims that

26   Williams is the author of the photograph relied on by the CWC declarants to judge Sonders' health,

27   and that said photograph is 20 years old. *Id.* at ¶¶ 13-14.

28   In further support of his physical disability, Sonders has provided a letter from a doctor that

1  reads as follows:

2      Honorable Judge,
       This letter is to request that there be a quick resolution to the case against Mr.
3      Sonders.  The enormous stress from this law suit is having an adverse effect upon his
       health, both physically and mentally.  Due to his condition, Mr. Sonders is unable to
4      travel more than 25 miles from his home.  If he must report to court to settle this
       matter he will need for the case to be transferred to the Court House in Los Angeles.
5      Thank you for your attention to this court case.

6      Sincerely,

7       John H(redacted) M.D.

8  Sonders' Reply Decl. at Exhibit 4-A.  Sonders also provides an additional copy of his handicapped

9  parking placard and a letter from the Social Security Administration to Sonders indicating that

10 Sonders receives SSI benefits.  *Id.* at Exhibit 4-B and 4-C.

11     Also in his Reply, Sonders for the first time makes the argument that transfer is warranted

12 because he will face financial hardship if he is required to litigate in the Northern District. Reply 3.

13     Sonders also argues for the first time that CWC has failed to establish that personal

14 jurisdiction exists in the Northern District.  *Id.* at 4.

15     Finally, in his declaration, Sonders asserts that CWC's complaint is a sham and the case

16 should be dismissed, that CWC has claimed breach of contract but no contract actually exists, that

17 Sonders has "Absolute Immunity from any perceived liability pursuant to Section 720-a of the not-

18 for-profit corporation law," and that CWC's counsel, Ray Shahani, has made numerous threats

19 against Sonders, including threatening to sue Sonders' friends if CWC is unable to collect damages

20 from Sonders.  Sonders' Reply Decl. at ¶¶ 9-15.

21 **III.    ANALYSIS**

22     **A.    Consideration of Sonders' Letter Brief and Late Reply Brief.**

23     As a preliminary matter, the Court addresses CWC's contention that Sonders' Letter Brief

24 should be stricken or otherwise disregarded in deciding this Motion because it was an improper ex

25 parte communication with the Court and an improper filing in support of the Motion. The Court also

26 addresses the fact that Sonders filed his Reply brief on September 15, 2011, 20 days after the filing

27 deadline set by the Court.  *See* Order re Motion for Extension of Time (Dkt. No. 22).

28     The Court will take Sonders' Letter Brief and Reply into consideration in deciding this

13

1    Motion because Sonders is a pro se defendant and CWC will not suffer any prejudice as a result.

2    Courts have routinely held that pro se parties should be afforded special leniency with respect to

3    procedural matters. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (pro se complaint is held to

4    less stringent standard than formal pleadings drafted by lawyers); *Boydston v. Asset Acceptance*

5    *LLC*, 496 F.Supp.2d 1101, 1106 (N.D. Cal. 2007) ("The Court must construe a pro se litigant's

6    pleadings liberally."). Here, Sonders failed to follow the Local Rules by filing what amounted to a

7    supplemental brief in support of the Motion with his Letter Brief, failing to serve the Letter Brief on

8    Plaintiff, and filing his Reply brief several weeks late. Nonetheless, CWC received notice of the

9    Letter Brief when it was filed by the Court over seven weeks before CWC's opposition was due and

10   had sufficient time to respond to Sonders' additional arguments in its Opposition brief. Moreover,

11   the late Reply brief was filed several weeks before the Motion hearing and CWC had an opportunity

12   to address Sonders' arguments at oral argument. Therefore, the Court concludes that CWC will not

13   be prejudiced by its consideration of these pleadings.

14        **B.        Legal Standard**

15        Pursuant to 28 U.S.C. § 1404(a), a case may be transferred to any district where venue is

16   proper "[f]or the convenience of parties and witnesses, in the interest of justice[.]"  A party seeking

17   transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice of forum."

18   *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The district

19   court has discretion to transfer cases based on the individualized facts of each case and

20   considerations of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th

21   Cir. 2000).  In determining whether to transfer an action under § 1404(a), courts may consider the

22   following factors:

23              (1) the location where the relevant agreements were negotiated and executed, (2)
              the state that is most familiar with the governing law, (3) the plaintiff's choice of
24              forum, (4) the respective parties' contacts with the forum, (5) the contacts relating
              to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs
25              of litigation in the two forums, (7) the availability of compulsory process to
              compel attendance of unwilling non-party witnesses, and (8) the ease of access to
26              sources of proof.

27   *Id.* at 498-499.

28

**United States District Court**
For the Northern District of California

**C.      Whether the Action Should be Transferred.**

Sonders argues that this action should be transferred because he resides in the Central District and is physically disabled, many witnesses and pieces of evidence are located in the Central District, and Plaintiff's claims have little connection with the Northern District other than the fact that it is where CWC and its counsel are located.  Having reviewed the submissions of the parties and considered the factors listed above, the Court concludes that although venue is proper in the Central District of California, Sonders has not made an adequate showing that the convenience of the parties and witnesses, the contacts with the forums and the access to proof are significant enough to upset CWC's choice of forum.

**1.      Whether Venue is Proper in the Central District of California**

Pursuant to 28 U.S.C. § 1404(a), a case may be transferred only to a venue where the case could have been brought.  Here, CWC does not dispute that venue is proper in the Central District and the Court agrees.  Under § 1391(b) venue is proper in "(1) a judicial district where any defendant resides . . ., (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . .."  Similarly, under 28 U.S.C. § 1400(a), "[c]ivil actions, suits or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." As Sonders resides in the Central District, venue is proper in that district.  Therefore, the Court considers the factors listed above to decide whether a transfer to the Central District of California is appropriate.

**2.      Convenience of the Parties**

The Court recognizes the inconvenience imposed on parties forced to litigate away from their home jurisdiction.  However, the Court will not transfer a case that merely shifts the inconvenience to the other party.  *U.S. v. Covenant Care, Inc.*, 2003 U.S. Dist. LEXIS 19489, at *2 (N.D. Cal. Sep. 8, 2003).  The defendant must be able to make a strong showing of inconvenience in order to upset the plaintiff's choice of forum.  *Decker Coal Co.*, 805 F.2d at 843. Here, Sonders claims this case should be transferred based on the convenience of the parties because he suffers from a physical disability and faces financial hardship.

**United States District Court**
For the Northern District of California

**a.      Sonders' Physical Disability**

"[Under 28 U.S.C. § 1404(a),] the medical condition of a party. . ., and the potential danger posed if such persons are required to travel, are considerations that can be weighed by the court in determining the appropriateness of transferring venue." *Nature Path, Inc. v. Howell*, 2009 U.S. Dist. LEXIS 114282, *15-16 (D. Idaho Dec. 8, 2009) (citing *Cohen v. State Farm and Cas. Co.*, 2009 U.S. Dist. LEXIS 77758, *14-15 (E.D. Cal. Aug. 13, 2009).).  However, courts have generally maintained a  high standard of proof and persuasion in making transfer determinations based on a party's medical condition.  *See, e.g., Nature Path*, 2009 U.S. Dist. LEXIS 114282*; XCEL Data Systems, Inc. v. Best*, 2009 U.S. Dist. LEXIS 35013, (E.D. Cal. Apr. 7, 2009).  As discussed below, the Court is not persuaded that Sonders' asserted physical disability  justifies a transfer in this case.

Where a party's medical condition is at issue in making the determination as to whether a transfer under § 1404(a) is appropriate, courts have declined to attach great weight to a party's medical condition where there was not clear evidence of a severe disability.  For example, in *Nature Path*, 2009 U.S. Dist. LEXIS 114282, at *10-11, the Defendant sought to dismiss for improper venue, or in the alternative, transfer venue from Idaho to California..  The defendant argued that transfer was appropriate, in part, because she was "diagnosed with an aggressive, inflammatory, intraductal breast cancer at an advanced stage," and according to a letter from her doctor, "she is unable to travel or work (presumably including having to defend a civil law suit as a pro se defendant) without 'causing severe consequences.'" *Id.* at *15.  In denying the defendant's motion to transfer, the court reasoned that although a party's medical condition is a consideration, the medical information was not provided in an admissible form, by way of affidavit or otherwise. *Id.* at *16-17. Furthermore, the doctor's note suggested that the defendant would not be able to defend herself in general, whether the case was in Idaho or California. *Id.* at *16.

Similarly, in *XCEL Data Systems,* 2009 U.S. Dist. LEXIS 35013, at *13-14, the defendant claimed transfer was appropriate because he suffered from "progressive neurological disorder known as multifocal motor neuropathy that requires four or five consecutive days of intravenous treatment every four weeks that is closely monitored by a trained IV nurse." The defendant's doctor wrote a letter stating, "[the defendant's] insurance provider likely will not make arrangements for treatment

**United States District Court**
For the Northern District of California

1    in California and. . . missing regularly scheduled treatment is detrimental to [his] health." *Id.* at *14.

2    The doctor further explained that the defendant was significantly impaired with weakness in his

3    upper extremities and was unable to perform routine activities of daily living without support from

4    his wife. *Id.* While the court recognized the inconvenience that the defendant would endure, it was

5    determined that his disability did not warrant a transfer. *Id.* at *15.  The court reasoned that the

6    defendant failed to provide any evidence from his insurance carrier or doctor that treatment could

7    not be performed in California. *Id.*  Furthermore, the court claimed that hearings, appearances and

8    trial could be scheduled in a manner to accommodate his treatment schedule. *Id.*

9         Here, Sonders has not provided information as to the precise nature of his disability.

10   Therefore, the Court concludes this factor does not warrant a transfer to the Central District.

11   Nonetheless, the Court is sensitive to the fact that conducting proceedings in the Northern District

12   may impose some burden on Sonders.  Therefore, Sonders will be permitted to attend all pretrial

13   proceedings, other than evidentiary hearings, telephonically.[4]

14              **b.    Sonders' Financial Situation**

15        Next, the court addresses Sonders' assertion that the case should be transferred in view of his

16   current financial situation.  Although "the parties' relevant financial position is not entitled to great

17   weight," it is a relevant consideration in determining whether a § 1404 transfer is appropriate.

18   *Brackett v. Hilton Hotels Corp.*, 88 U.S.P.Q.2d 1012, 1019 (N.D. Cal. 2008) (denying defendant's

19   motion to transfer and finding that where plaintiff was an individual artist and defendant was a

20   multinational corporation, the relative financial abilities of the parties weighed against transfer).  In

21   his Reply, Sonders argues that he will face financial hardship if he is required to litigate in the

22   Northern District of California.  Reply 3.  He supports this argument with his own sworn declaration

23   and evidence of receipt of SSI benefits.  *See* Sonders' Reply Decl. at Exhibit 4-C.

24

25        [4]As the Court explained at the Motion hearing, the question as to whether Sonders will be

26   required to appear in person at the settlement conference is up to the Magistrate Judge to whom the
     settlement conference is assigned.  Therefore, if Sonders wishes to appear telephonically for the

27   settlement conference he should make his request directly to the settlement conference judge once the
     parties have been notified of the Magistrate Judge assigned to conduct the settlement conference.  In

28   addition, prior to any hearing or proceeding before the undersigned Magistrate Judge at which Sonders
     would like to appear telephonically, he should contact Courtroom Deputy Karen Hom at 415-522-2035
     to provide the Court with the telephone number at which he can be reached.

United States District Court

For the Northern District of California

This factor does not weigh in favor of transfer for two reasons.  First, Sonders does not raise this point until his Reply brief, and it is well-established that arguments raised for the first time in a reply brief are not to be considered in deciding a motion.  *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).  Second, even if the Court were to consider this factor, Sonders has not provided sufficient evidence to establish that his financial situation warrants transfer of venue.  Therefore, this factor does not weigh in favor of transfer.

### 3.      Convenience of the Witnesses

One of the most important factors in determining whether to grant a motion to transfer is the convenience of the witnesses.  *Royal Queentex Enterprises Inc. v. Sara Lee Co.*, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000).  "To demonstrate an inconvenience to witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Security and Exchange Commission v. Rose Fund, LLC*, 2004 WL 2445242, at *3 (N.D. Cal. Jan. 9, 2004).  Where transfer of venue would merely shift the inconvenience from the witnesses for one party to the witnesses of the other, the factor does not weigh in favor of transfer. *See Decker Coal Co.*, 805 F.2d at 843.  However, the court will accord less weight to the inconvenience of witnesses who are the employees of one of the parties since they can be compelled to testify regardless of the forum.  *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1132-33 (C.D. Cal. 2009).

Sonders has provided a witness list that includes 24 witnesses that reside in the Central District, along with very brief descriptions of the subjects on which he contends these witnesses will testify.  Sonders' Reply Decl. at Exhibit 3.  Sonders asserts generally that "most" of these witnesses are elderly and "many" are disabled. *Id.*  Sonders also states that the witnesses all "have jobs, careers, families, and other responsibilities in Los Angeles that prevent them from traveling to San Francisco" to participate in this case.   Sonders' Decl. at ¶ 3.

Sonders fails, however, to state with any particularity why participation in litigation in the Northern District would impose a significant burden on any individual witness.  In addition, the brief statements describing the issues to which these individuals will testify do not provide a sufficient basis on which to evaluate the importance of any of these individual's testimony.  In light of Sonders'

United States District Court

For the Northern District of California

1  vague and conclusory assertions regarding the inconvenience of participating in litigation in the

2  Northern District, as well as the lack of details as to the subject matter of these witnesses' testimony,

3  the Court is not persuaded that a transfer will result in anything other than a transfer of the burden

4  from Defendant's witnesses to Plaintiff's witnesses who reside in the Northern District.  Therefore,

5  this factor does not weigh in favor of transfer of venue.

6                    **4.      Contacts With the Forum**

7          As a general rule, a plaintiff's choice of forum is entitled to substantial weight in deciding

8  whether to grant a motion to transfer venue.  *Decker Coal Co.*, 805 F.2d at 843.  However, "[i]f the

9  operative facts have not occurred within the forum of original selection and that forum has no

10  particular interest in the parties or the subject matter, the plaintiff's choice of forum is only entitled

11  to minimal consideration."  *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968).

12  Furthermore, if it appears that a plaintiff's choice of forum is the result of forum shopping, then that

13  selection is accorded less weight.  *Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001).

14          In order for this factor to weigh in favor of transfer, the forum must lack any significant

15  contact with the activities alleged in the complaint.  For example, in *Nordquist v. Complete Wellness*

16  *Family Chiropractic*, 2006 U.S. Dist. LEXIS 64495, at *1 (W.D. Wash. Sep. 11, 2006), the

17  defendant sought to transfer venue from the Western District of Washington to the Northern District

18  of Texas.  In that case, the plaintiff, while a resident of Texas, negotiated the sale of his Texas-based

19  business to the defendant.  *Id.* at *2-3.  Before the sale was finalized, the plaintiff moved to

20  Washington, and subsequently signed the final contract in Washington.  *Id.*  In granting the

21  defendant's motion to transfer, the Court reasoned that the plaintiff signing the contract in

22  Washington was not significant when compared to the fact that the business was located in Texas,

23  the defendant resided in Texas, and the contract negotiations took place in Texas while the plaintiff

24  resided there.  *Id.* at *7, 10-11.

25          The Court concludes that CWC's choice of forum should be given its due weight because

26  CWC's claims have a significant connection with the Northern District.  The undisputed evidence

27  establishes that CWC was founded in the Northern District and has been based in Northern

28  California since its creation, almost a century ago.  The claims in this case are based on the alleged

**United States District Court**

For the Northern District of California

1    agreement for a writers group in the San Fernando Valley to become affiliated with CWC and

2    subsequent disputes that arose between the two groups.  Thus, the alleged harm was inflicted in the

3    Northern District.  The evidence also shows that Sonders came to Northern California to participate

4    in several CWC board meetings.[5]  Therefore, the Court concludes that in this case, in contrast to

5    *Nordquist*, CWC's claims have a significant connection to the Northern District and that this factor

6    does not support a transfer to the Central District.

7        Finally, there is no evidence that CWC's choice of forum was the result of improper forum

8    shopping or that its choice is so oppressive or vexatious to Sonders as to be out of proportion to

9    CWC's convenience.

10                **5.    Access to Proof**

11       Another factor that the court weighs in determining whether to transfer venue is the ease of

12   access to evidence and documentary proof needed for trial.  *Decker Coal Co.*, 805 F.2d at 843.

13   Sonders claims that all of the relevant documents and records are located in the Central District at

14   Defendants' principal place of business.  Motion 4.  CWC, on the other hand, claims that all

15   business and financial records and evidence of the infringements and other claims are located in

16   CWC's Union City corporate offices in the Northern District.   Opposition at 4.

17       The Court concludes that this factor does not weigh in favor of transfer because Sonders has

18   failed to make an adequate showing that transfer is necessary.  "As with witnesses, general

19   allegations that transfer is needed for the ease of obtaining records and books are not enough."

20   *DeFazio v. Hollister Employee Share Ownership Trust*, 406 F.Supp.2d 1085, 1091 (E.D. Cal. 2005)

21   (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §§ 3853-54 at 438.)

22   "The moving party must show the location and the importance of the documents in question." *Id.*

23   Furthermore, the court should also consider whether moving records would cause any hardships. *Id.*

24   In *DeFazio*, the Court denied Defendant's motion to transfer, in part, because Defendant had

25   generally stated that the relevant documents were generated and kept in Illinois, but had failed to

26   explain how they would suffer any hardship or prejudice.  *Id.*

27

28
_____

[5]The Court notes that Sonders does not challenge the evidence produced by CWC indicating that Sonders attended several CWC board meetings in Northern California. *See* Garfinkle Decl. at Exhibits 2-4 (minutes from CWC board meetings).

United States District Court
For the Northern District of California

1     Similarly, although Sonders states that relevant documents are located in the Central District,

2  he has failed to explain their importance and how he might suffer any hardship by having to move

3  these documents to the Northern District.  Therefore, this factor does not weigh in favor of transfer

4  to the Central District.

5  **IV.     CONCLUSION**

6     Having considered the relative burdens of litigating in the Central District compared to the

7  Northern District and the general rule that a plaintiff's choice of forum is entitled to substantial

8  weight, the Court concludes that Sonders has failed to make an adequate showing that transfer is

9  warranted for the convenience of the parties and witnesses and in the interest of justice.  Therefore,

10  the Motion is DENIED.

11     IT IS SO ORDERED.

12

13  Dated: October 3, 2011

14

15  _____

16  JOSEPH C. SPERO
    United States Magistrate Judge